UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-20104-BECERRA

UNITED STATES OF AMERICA

v.

ARCANGEL PRETEL ORTIZ, et al.,

    Defendants.
                                    /

**UNITED STATES' OPPOSITION TO SEALED MOTION
REQUESTING RELOCATION OF RULE 15 DEPOSITIONS (DE 1260)**

The United States opposes defendant Antonio Intriago's November 12, 2025, sealed motion (DE 1260), which seeks a Court order asking the Haitian government to relocate the defense-requested Rule 15 depositions scheduled to begin on November 19, 2025. It has taken almost six months, and substantial effort on the Government's part, to arrange these depositions. The Haitian government has also expended significant resources accommodating these depositions despite having no legal obligation to do so. Arranging five days of video conferences, in the midst of the violence occurring in Port-au-Prince, Haiti, has been no small feat. The Court should not lodge an eleventh-hour request to move the depositions for four reasons.

First, as a legal matter, such a request would not obligate Haiti to do anything. Whether, when, and how these depositions will occur in Haiti are decisions that only the Haitian government can make. *See United States v. Salim*, 855 F.2d 944, 950 (2d Cir. 1988) ("A sovereign nation is entitled to refuse to acquiesce in the use within its borders of American methods of gathering, preserving and presenting evidence[.]"). In *Salim*, for instance, after the district court granted foreign Rule 15 depositions in France, the French courts dictated that the proceedings would occur in a manner far different than a typical U.S. proceeding, with a French magistrate (rather than the

parties) questioning the witness based on the parties' written submissions.  855 F.2d at 947-48.  Yet in affirming the admissibility of this deposition, the Second Circuit observed that "it is not always possible to take a deposition in a foreign country in the manner that we might prefer[.]"  *Id.* at 951.  Thus, the time, place, and manner of conducting foreign Rule 15 depositions are not features that parties in the United States can control.

Second, as a practical matter, lodging a relocation request at such a late date, so close to the planned start of the depositions, is very likely to delay or disrupt the proceedings—and could potentially result in Haiti declining to allow the depositions to occur at all.  As noted in the Government's prior filings, it has taken six months of diplomatic efforts to secure Haiti's agreement to facilitate the defense's requested depositions at the Central Directorate of the Judicial Police ("DCPJ").  *See* (DE 1116, 1187, 1197, 1223).  The Government initially submitted its request to the Haitian government on May 30, 2025 (DE 1116:1).  Yet as late as September 29, 2025, the Haitian Minister of Justice stated that these depositions could not occur because the appropriate facility, the Port-au-Prince Court of Appeals, had moved to a new location and no longer had the technological capability of hosting a videoconference (DE 1187:4).  In a formal response, transmitted on October 6, 2025, the United States Department of State, at the behest of the U.S. prosecution team, inquired about the possibility of using an alternate location or alternate means to conduct the depositions (DE 1197:1).  The Haitian government responded over two weeks later, on October 21, 2025, after undertaking substantial efforts to arrange the necessary logistics to bring the prisoners to DCPJ and to hold the depositions there (DE 1223:3).  That history of communications, and the length of time between them, shows how difficult and time-consuming it has been to secure a viable deposition location.

Given the lead time required to make these arrangements, the Government anticipates that asking for a location change would delay the proceedings substantially, to the extent Haiti is even willing or able to accommodate a last-minute change. As noted in a September 2025 declaration from the U.S. State Department, Haiti is "mired in an unprecedented political and security crisis" (DE 1187-1). Moving the depositions under these circumstances is not a simple or small request. It would require (a) drawing up new security plans or securing new routes to be able to transport the prisoners safely to a new location, which must be a secure site; (b) ensuring that alternate site has the necessary infrastructure, such as stable power and internet access, to be able to host these depositions; and (c) moving equipment, specifically set up at DCPJ for these depositions, to a new location—all through a city whose "current security environment . . . is exceptionally volatile, with heavily armed gangs attacking and exerting control over the country's territory" (DE 1187-1). The arrangements for the current depositions, slated to occur at DCPJ, have taken months to complete. It is neither prudent nor feasible to go back to the drawing board now.

Third, defendant Intriago's request is untimely. The Government first informed the defendants of the Haitian government's offer to facilitate the Rule 15 depositions on October 21st, the same date that the U.S. prosecution team learned of that offer. On October 22, 2025, the Government explained, as part of proposing a joint filing with the defendants, that the depositions would occur at the DCPJ. And the parties submitted their joint motion for the Court's assistance, which stated that "the Haitian government can facilitate virtual depositions at the Central Directorate of the Judicial Police ('DCPJ')" (DE 1223:2), the next day, October 23, 2025. The Court then conducted a hearing to discuss and agree upon additional logistical issues on October 28, 2025 (DE 1241). At none of these times did Intriago request a different location for the depositions. In sum, the parties have known about the depositions' location at DCPJ, and the

Government has expended significant effort and resources to finalize preparations for depositions at DCPJ, for the past three weeks.  It is too late to seek a new location now, and to disrupt the arrangements already made, with only days left until the depositions begin on November 18, 2025.

Finally, although the Government does not concede the factual underpinnings of the defense motion,[1] the Government has already taken steps to address any concern with ensuring the integrity of the witnesses' testimony.  Although it is up to the Haitian government, the Government has requested that the only people attending each deposition be the deponent, his Haitian criminal counsel, and necessary technology or security personnel.  The Government also notes that, despite the deponents' purported fear of being tortured if they speak out, they have already made similar statements—including alleging torture and denying their culpability—in recorded Haitian court hearings with Haitian law enforcement and other Haitian authorities present.  *See, e.g.*, https://www.youtube.com/watch?v=I245XDAM_Ak (Victor Albeiro Pineda Cardona); https://www.youtube.com/watch?v=bdziKUJmq_s&t=5s (Juan Carlos Yepes Clavijo); https://www.youtube.com/watch?v=wpM3lAM-LOo (Naiser Franco Castaneda).  It is unclear why they would suffer any reprisal from making statements in U.S. depositions, which are not publicly available, that they have already made in public Haitian court hearings.

---

[1] The motion states that "[a]ll of the Colombians, without exception[,] were brutally tortured," and that it "is indisputable and unassailable that all these individuals were sadistically tortured by Haitian Law Enforcement" at DCPJ (DE 1260:1-2).  The Government has no basis to accept those allegations.  Some Colombian prisoners did suffer physical abuse, although some (perhaps much) of that abuse was at the hands of crowds of enraged civilians and occurred before Haitian law enforcement took the Colombians into custody.  In July 2021, when first interviewing some individuals like German Rivera, U.S. investigators documented allegations of mistreatment or torture, including by taking photographs of visible injuries.  The Government does not have contemporaneous, July 2021 accounts or photographs of injuries for the Rule 15 deponents, although some of them made such allegations years later, in April 2023 follow-up interviews.

4

## CONCLUSION

For all these reasons, the Court should deny Intriago's sealed motion (DE 1260).

Respectfully submitted,

| | |
|---|---|
| JASON REDING QUIÑONES<br>United States Attorney | JOHN A. EISENBERG<br>Assistant Attorney General for the National Security Division |
| By: /s *Sean T. McLaughlin*<br>Sean T. McLaughlin<br>Assistant United States Attorney<br>Court ID No. A5501121<br>11200 NW 20th Street, Suite 101<br>Miami, FL 33172<br>(305) 715-7642/7654<br>Sean.McLaughlin@usdoj.gov | /s *Andrew Briggs*<br>Andrew Briggs<br>Trial Attorney<br>Court ID No. A5503251<br>National Security Division – Department of Justice<br>950 Pennsylvania Avenue<br>Washington, DC 20530<br>(202) 514-7739<br>Andrew.Briggs2@usdoj.gov |
| /s *Jason Wu*<br>Jason Wu<br>Assistant United States Attorney<br>Court ID No. A5502299<br>99 NE 4th Street<br>Miami, FL 33132<br>(305) 961-9226<br>Jason.Wu@usdoj.gov | |
| /s *Altanese Phenelus*<br>Altanese Phenelus<br>Assistant United States Attorney<br>FL Bar No. 112693<br>99 N.E. 4th Street<br>Miami, FL 33132<br>(305) 961-9375<br>Altanese.Phenelus@usdoj.gov | |

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2025, I filed the foregoing document with the Clerk of the Court through CM/ECF and thus served all counsel of record.

/s *Jason Wu*
Jason Wu
Assistant United States Attorney